UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARQUEL WILLIAMS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-01499 |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND OPINION

Plaintiff Marquel Williams ("Williams") seeks judicial review of an administrative decision denying her applications for disability insurance benefits under Title II and Title XVI of the Social Security Act (the "Act"). *See* Dkt. 1. Before me are competing motions for summary judgment filed by Williams and Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner").[1] *See* Dkts. 17–18. After reviewing the briefing, the record, and the applicable law, Williams's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings.

## BACKGROUND

Williams filed applications for disability insurance benefits under Title II and Title XVI of the Act on February 10, 2016, alleging disability beginning on February 15, 2014. Her applications were denied and denied again upon reconsideration. Subsequently, an Administrative Law Judge ("ALJ") held a hearing and found that Wilson was not disabled. Williams filed an appeal with the

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security and is automatically substituted as a party under Federal Rule of Civil Procedures 25(d).

Appeals Council. The Appeals Council denied review, making the ALJ's decision final and ripe for judicial review.

## APPLICABLE LAW

The standard of judicial review for disability appeals is provided in 42 U.S.C. § 405(g). *See Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Courts reviewing the Commissioner's denial of social security disability applications limit their analysis to (1) whether the Commissioner applied the proper legal standards, and (2) whether the Commissioner's factual findings are supported by substantial evidence. *See Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). Addressing the evidentiary standard, the Fifth Circuit has explained:

> Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance. It is the role of the Commissioner, and not the courts, to resolve conflicts in the evidence. As a result, [a] court cannot reweigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. A finding of no substantial evidence is warranted only where there is a conspicuous absence of credible choices or no contrary medical evidence.

*Ramirez v. Colvin*, 606 F. App'x 775, 777 (5th Cir. 2015) (cleaned up). Judicial review is limited to the reasons relied on as stated in the ALJ's decision, and *post hoc* rationalizations are not to be considered. *See SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947).

Under the Act, "a claimant is disabled only if she is incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (cleaned up). The ALJ uses a five-step approach to determine if a claimant is disabled, including:

> (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past

2

relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

*Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018) (quoting *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017)).

The burden of proof lies with the claimant during the first four steps before shifting to the Commissioner at Step 5. *See id.* Between Steps 3 and 4, the ALJ considers the claimant's residual functional capacity ("RFC"), which serves as an indicator of the claimant's capabilities given the physical and mental limitations detailed in the administrative record. *See Kneeland*, 850 F.3d at 754. The RFC also helps the ALJ "determine whether the claimant is able to do her past work or other available work." *Id.*

## THE ALJ'S DECISION

The ALJ found at Step 1 that Williams had not engaged in substantial gainful activity since February 15, 2014. Dkt. 14-3 at 23.

The ALJ found at Step 2 that Williams suffered from "the following severe impairments: morbid obesity, fibromyalgia, anxiety, bipolar disorder, post traumatic stress disorder . . . , lupus, substance abuse including marijuana, and liver disease." *Id.* at 24.

At Step 3, the ALJ found that none of these impairments met any of the Social Security Administration's listed impairments.

Prior to consideration of Step 4, the ALJ determined Williams's RFC as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she cannot climb ladders, ropes or scaffolds. She can occasionally climb ramps and stairs, stoop, bend, balance, kneel, crouch and crawl. She can understand, remember and apply/carry out simple instructions, which includes performing simple and repetitive tasks. She can maintain concentration, persistence or pace for 2 hour periods with customary breaks during an 8-hour workday. She cannot perform any fast paced production work. She can occasionally interact with

3

supervisors and coworkers, but she can have only superficial/incidental contact with the general public.

*Id.* at 25.

At Step 4, the ALJ found that Williams had no past relevant work. Based on the Medical-Vocational Rules, the ALJ explained that Williams is not disabled. *See id.* at 29. Nonetheless, the ALJ elicited testimony from a vocational expert ("VE"), supporting her Step 5 determination that "there are jobs that exist in significant numbers in the national economy that [Williams] can perform." *Id.*

## DISCUSSION

Williams contends that this matter must be remanded because the ALJ improperly weighed the medical opinion of her treating physician, Ruben Mendez, M.D.[2] Based on this error, Williams argues that "the ALJ's RFC finding is not supported by substantial evidence and results from legal error." Dkt. 17 at 11. I agree.

Disability claims filed before March 27, 2017, such as the claims in this case, are still subject to the so-called "treating physician rule." Under the treating physician rule, "[a]n ALJ should give controlling weight to the opinion of a treating physician unless there is good cause to discount it. Good cause may exist if the opinion is contrary to other experts and is not supported by the evidence." *McCoy v. Colvin*, No. H-14-3041, 2015 WL 12570990, at *2 (S.D. Tex. Dec. 22, 2015). In the absence of good cause, "an ALJ may reject the opinion of a treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" 20 C.F.R. § 404.1527(c). *Aguilar v. Berryhill*, No. 5:16-CV-900-DAE, 2018 WL 1833246, at *5 (W.D. Tex. Mar. 22, 2018) (cleaned up). Under the regulatory analysis, the ALJ must evaluate: "(1) the physician's length of

---

[2] Williams also argues that the ALJ improperly weighed the medical opinion of her examining expert physician, Evelyn Turner, Ph.D., and failed to fully develop the record. I do not reach these arguments.

4

treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; (6) the specialization of the treating physician; and, (7) any other considerations." *Bass v. Saul*, No. H-19-1525, 2020 WL 3405794, at *10 (S.D. Tex. June 19, 2020) (citing 20 C.F.R. § 404.1527(c)).

Dr. Mendez is Williams's treating physician.[3] The administrative record contains two of Dr. Mendez's treatment notes, dated October 24, 2017, and January 30, 2018. *See* Dkt. 14-18 at 71–83. In addition, Dr. Mendez provided a Mental Residual Functional Capacity Form dated October 18, 2018 ("MRFCF"). *See* Dkt 14-20 at 37–41. In the MRFCF, as described by the ALJ, "Dr. Mendez opined the claimant had severe depression and a limited attention span and short-term memory, as well as numerous other seriously limited mental restrictions." Dkt. 14-3 at 28. The ALJ gave this opinion "no weight," explaining that "it is inconsistent with Dr. Mendez's own treatment notes . . . , which show the claimant's mental status examination was normal, except for a depressed/anxious mood." *Id.* In my view, this cursory explanation for discounting Dr. Mendez's opinion does not constitute good cause.

I disagree with the ALJ's assertion that Dr. Mendez's treatment notes are inconsistent with the MRFCF. To be sure, in the treatment notes Dr. Mendez stated that the mental examination "did not reveal[] any impairment in memory and

---

[3] The Commissioner disputes this fact throughout the briefing, arguing that Dr. Mendez does not qualify as a treating physician under the relevant regulations. I am not swayed by the Commissioner's position for two reasons. First, the argument offered by the Commissioner was not expressed by the ALJ. *See Bennett ex rel. Bennett v. Saul*, No. 3:19-CV-00064, 2019 WL 6255235, at *1 (S.D. Tex. Nov. 22, 2019) (I cannot consider "[p]ost hoc rationalizations for an agency decision."). Second, and more importantly, the ALJ expressly referred to Dr. Mendez as Williams's treating physician. *See* Dkt. 14-3 at 27 (referring to Dr. Mendez's treatment notes as "claimant's treating psychiatrist's treatment notes").

concentration, judgment, insight, thought process, thought content, or speech." *Id.* Nonetheless, Dr. Mendez continued to prescribe Williams powerful medicines to treat her mental health. Moreover, on October 24, 2017, Dr. Mendez assessed that Williams was dealing with anxiety and bipolar disorder. *See* Dkt 14-18 at 78, 82. By January 30, 2018, Dr. Mendez added an additional diagnosis: post-traumatic stress disorder. *See id.* at 75. Then came the MRFCF. In the MRFCF, Dr. Mendez quantifies his treatment history into digestible bits of information related to specific prompts. In narrative form, he explains his treatment of Williams's conditions with various medications and the inadequacy of her response to such medications. Importantly, the MRFCF even demonstrates that Dr. Mendez conducted a "DSM-IV Multiaxial Evaluation," an examination not contained in any of his other treatment notes.[4] Importantly, this evaluation seems to have taken place during Williams's last visit to Dr. Mendez—a detail not noted by the ALJ.[5] Boiled down, this is not a clear-cut instance where a physician's treatment notes are unquestionably inconsistent with a particular RFC related form. Thus, the ALJ's mere assertion of inconsistency in this case does not amount to good cause for the summary rejection of Dr. Mendez's medical opinion. *See Simon v. Comm'r of Soc. Sec. Admin.*, 1 F.4th 908, 920 (11th Cir. 2021) (finding no inconsistency

---

[4] "A multiaxial evaluation involves an assessment on several axes, each of which refers to a different domain of information that may help the clinician plan treatment and predict outcome. The assessment facilitates comprehensive and systematic evaluation with attention to clinical and personality disorders (Axes I & II), general medical conditions (Axis III), psychological and environmental problems (Axis IV), and level of functioning (Axis V) that might be overlooked if the focus were on assessing a single presenting problem." *Kelly v. Colvin*, No. 4:13-CV-00070, 2015 WL 3752474, at *12 n.5 (W.D. Va. June 16, 2015) (cleaned up).

[5] The hearing before the ALJ took place on October 25, 2018. During the hearing, Williams testified that she saw Dr. Mendez "last week." *See* Dkt. 14-3 at 49. The ALJ accepted that representation, explaining in the decision that Williams "last saw her psychiatrist last week." *Id.* at 26. This sequence of events aligns perfectly with the date of the MRFCF, October 18, 2018.

sufficient to support good cause where treatment notes indicated the claimant was "stable on medication" because "a snapshot of any single moment says little about a person's overall condition," especially when dealing with diagnoses like bipolar disorder (quotation omitted)).

Because the ALJ did not have good cause to reject Dr. Mendez's medical opinion, she was required to conduct the analysis required by § 404.1527(c). This was also not done here.

In sum, the ALJ has offered neither good cause for rejecting Dr. Mendez's medical opinion nor conducted the analysis required by § 404.1527(c). The ALJ did not apply the correct legal standard and remand is appropriate. *See Wichman v. Astrue*, 857 F. Supp. 2d 618, 630 (W.D. Tex. 2012) ("When the ALJ fails to use the appropriate legal standard in assessing the opinions of a plaintiff's treating physician, the case must be remanded.").

## CONCLUSION

For the reasons provided above, Williams's motion for summary judgment is **GRANTED**, and the Commissioner's motion for summary judgment is **DENIED**. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

SIGNED this 30th day of July 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE